IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-650-D

| | |
|---|---|
| LAVERNE VITA DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Laverne Vita Dunn ("plaintiff" or, in context, "the claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 19, 22). Both filed memoranda in support of their respective motions (D.E. 20, 23). In addition, plaintiff separately filed two evidentiary exhibits (D.E. 21). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 25). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

**I.    BACKGROUND**

    **A.    Case History**

Plaintiff filed an application for DIB on 6 June 2010 alleging the onset of disability on 6 June 2010. Transcript of Proceedings ("Tr.") 11. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 20 January 2012, a

hearing was held before an Administrative Law Judge ("ALJ") at which plaintiff and a vocational expert testified. Tr. 21-40. The ALJ issued a decision denying plaintiff's claim on 29 March 2012. Tr. 11-18. Plaintiff timely requested review by the Appeals Council. Tr. 7. On 25 July 2013, the Appeals Council admitted into the administrative record a letter brief submitted by plaintiff (Tr. 180-82) and denied the request for review. Tr. 1-6. In the notice of denial, the Appeals Council stated that it had reviewed several medical records, but found them irrelevant because they postdated the ALJ's decision, and it did not admit them into the administrative record. Tr. 2. By virtue of the Appeals Council's denial, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 13 September 2013, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

2
Case 5:13-cv-00650-D   Document 27   Filed 07/30/14   Page 2 of 19

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If

a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

To establish entitlement to DIB, a claimant must show not only that he is disabled, but also that the disability began before the date of expiration of his disability insured status, known as the "date last insured" ("DLI"). 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

### C.     Findings of the ALJ

Plaintiff was 49 years old on the alleged onset date of disability, 50 years old on her DLI, and 50 years old on the date of the hearing. *See* Tr., *e.g.*, 25. She testified that she has a high school education and associate's degree. Tr. 26.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date of 6 June 2010 through her DLI of 31 December 2011 ("relevant period"). Tr. 13 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: multiple sclerosis and chronic fatigue syndrome. Tr. 13 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings. Tr. 15 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a full range of light work. Tr. 15 ¶ 5. The Regulations define "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).[1] At step four, the ALJ accepted the testimony of the vocational expert and found that plaintiff was able to perform her past relevant work as a data entry operator and hospital admitting clerk, which the ALJ ruled were at the sedentary exertional level. Tr. 17-18 ¶ 6. The ALJ accordingly concluded that plaintiff had not been under a disability at any time during the relevant period. Tr. 18 ¶ 7.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

---

[1] The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 30 July 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

5

Case 5:13-cv-00650-D   Document 27   Filed 07/30/14   Page 5 of 19

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.   DISCUSSION

### A.   Overview of Plaintiff's Contentions

Plaintiff contends that this case should be remanded, pursuant to sentence six of 42 U.S.C. § 405(g) ("sentence six"), for consideration of the evidentiary exhibits she submitted to this court. On the merits, she argues that the Commissioner erred in (1) determining plaintiff's RFC, (2) assessing plaintiff's credibility, and (3) evaluating the opinions of one of her treating neurologists, Kapil Rawal, M.D., of Carolina Neurology Consultants, PA. The court will address each issue separately.

### B. Newly Submitted Evidence

Sentence six provides for remand when evidence is submitted for the first time at the district court level. The evidence plaintiff submitted to this court consists of two letters postdating the ALJ's decision from plaintiff's neurologist S. Mitchell Freedman, M.D., of Raleigh Neurology Associates, P.A., who began treating plaintiff on 19 June 2012. One letter bears the date of this first visit, 19 June 2012 ("June 2012 letter") (D.E. 25 at 1-3). The other letter is dated 18 December 2013 ("December 2013 letter") (D.E. 25 at 4-5). In both letters, Dr. Freedman states the opinion, among others, that plaintiff is disabled.

Sentence six permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Stanley v. Colvin*, No. 7:12-CV-134-FL, 2013 WL 2447850, at *7 (E.D.N.C. 5 June 2013); *Edwards v. Astrue*, No. 7:07CV48, 2008 WL 474128, at *8 (W.D. Va. 20 Feb. 2008). There are accordingly three distinct requirements under sentence six.

First, the evidence must be new. "Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record." *Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Stanley*, 2013 WL 2447850, at * 7. Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96. Third, there must be good cause for failing to submit the evidence earlier. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). The burden of showing that the requirements of sentence six are met rests with the claimant. *See Fagg v. Chater*, 106 F.3d 390 (Table), 1997 WL 39146, at *2 (4th Cir. 3 Feb. 1997); *Keith v. Astrue*, No. 4:11CV0037, 2012 WL 2425658, at *2 (W.D. Va. 22 Jun. 2012) ("The burden of demonstrating

that all of the Sentence Six requirements have been met rests with the plaintiff."), *rep. and recommendation adopted by* 2012 WL 4458649, at *5 (9 Aug. 2012).

As to the requirement of newness, a threshold issue is whether these letters were previously submitted in the administrative proceeding. The court finds they were not. Notwithstanding plaintiff's request for remand, she alleges that she submitted the June 2012 letter to the Appeals Council. (Pl.'s Mem. 18). But she acknowledges that the Appeals Council never confirmed receipt or review of it. (Pl.'s Mem. 18). In addition, she adduced no proof that she submitted it to the Appeals Council.

The medical records the Appeals Council stated it reviewed but did not make a part of the administrative record included records from Raleigh Neurology. However, the dates given for those records do not match the dates of the two letters at issue; none of those records are identified as letters; and there is no other indication that the letters were among such records.

Turning to the substance of the letters, at least portions of both are new in satisfaction of the first requirement under sentence six. The new evidence in the June 2012 letter is Dr. Freedman's description of plaintiff's then-current condition, including the results of his examination of her on the date of the letter, and his opinion that plaintiff is disabled. The other portions of the letter are not new, including her work history and medical history. The entire contents of the December 2013 letter are new. They consist of an updated description of plaintiff's condition and Dr. Freedman's opinion that she remains disabled.

As to the second requirement, however, neither letter is material. The new evidence reflected in them relates to periods after the relevant period. *See Duncan v. Astrue*, No. 1:09CV00042, 2010 WL 723710, at *18 (W.D. Va. 26 Feb. 2010) ("[I]n order for the court to properly grant a remand due to additional evidence, the additional evidence must . . . relate to the

8
Case 5:13-cv-00650-D   Document 27   Filed 07/30/14   Page 8 of 19

that all of the Sentence Six requirements have been met rests with the plaintiff."), *rep. and recommendation adopted by* 2012 WL 4458649, at *5 (9 Aug. 2012).

As to the requirement of newness, a threshold issue is whether these letters were previously submitted in the administrative proceeding. The court finds they were not. Notwithstanding plaintiff's request for remand, she alleges that she submitted the June 2012 letter to the Appeals Council. (Pl.'s Mem. 18). But she acknowledges that the Appeals Council never confirmed receipt or review of it. (Pl.'s Mem. 18). In addition, she adduced no proof that she submitted it to the Appeals Council.

The medical records the Appeals Council stated it reviewed but did not make a part of the administrative record included records from Raleigh Neurology. However, the dates given for those records do not match the dates of the two letters at issue; none of those records are identified as letters; and there is no other indication that the letters were among such records.

Turning to the substance of the letters, at least portions of both are new in satisfaction of the first requirement under sentence six. The new evidence in the June 2012 letter is Dr. Freedman's description of plaintiff's then-current condition, including the results of his examination of her on the date of the letter, and his opinion that plaintiff is disabled. The other portions of the letter are not new, including her work history and medical history. The entire contents of the December 2013 letter are new. They consist of an updated description of plaintiff's condition and Dr. Freedman's opinion that she remains disabled.

As to the second requirement, however, neither letter is material. The new evidence reflected in them relates to periods after the relevant period. *See Duncan v. Astrue*, No. 1:09CV00042, 2010 WL 723710, at *18 (W.D. Va. 26 Feb. 2010) ("[I]n order for the court to properly grant a remand due to additional evidence, the additional evidence must . . . relate to the

period on or before the date of the ALJ's decision." (citing *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991))); *Edwards*, 2008 WL 474128, at *9 (denying remand where new evidence did not relate back to relevant time period and was created over six months after ALJ's decision). The June 2012 letter relates to plaintiff's condition almost 3 months after the relevant period and the December 2013 letter about 18 months afterward.

Plaintiff has failed to show that her condition as described in the letters reflects continuation of her condition as it existed during the relevant period, as opposed to subsequent deterioration of her condition. As discussed further below, records of one of plaintiff's treating neurologists, Dr. Rawal, showed that as late as 12 January 2012—the same month as the hearing before the ALJ and less than three months before the ALJ's decision—plaintiff did not have the disabling limitations Dr. Freedman found her to have later. *See* Tr. 246-67. Notably, because Dr. Freedman did not begin treating plaintiff until his 19 June 2012 visit with her, he lacked any personal knowledge of her condition during the relevant period. Moreover, multiple sclerosis generally results in the progressive deterioration of a patient's condition. *See Valley v. Astrue*, No. 3:11CV260–HEH, 2012 WL 3257876, at *1 (E.D. Va. 8 Aug. 2012) ("[Multiple sclerosis] is an incurable disease generally characterized by progressive deterioration in walking, muscle-control, vision, speech, and cognitive abilities.").

Additionally, the opinions expressed by Dr. Freedman in these letters that plaintiff was disabled are not entitled to special weight because of their source. *See* 20 C.F.R. § 404.1527(d)(1), (3). Rather, these opinions are on an issue reserved to the Commissioner. *Id.* (d)(1). The court concludes that neither letter creates a reasonable possibility that it would have changed the outcome of this case.

With respect to the third requirement, plaintiff has not shown good cause for not submitting the June 2012 letter to the Appeals Council. Although as noted, she alleges that she did submit it, the administrative record does not reflect such submission and plaintiff has not offered other proof of doing so. Of course, even if plaintiff had met the good cause requirement as to the June 2012 letter, failure to satisfy the materiality requirement would still preclude remand.

The good cause requirement is met with respect to the December 2013 letter because it was not created until after the Appeals Council's denial of review in July 2013. Again, though, failure to satisfy the materiality requirements still precludes remand on the basis of this letter.

In sum, because neither the June 2012 letter nor the December 2013 letter meets all three requirements of sentence six, they do not require remand of this case. The court should accordingly reject plaintiff's request for remand on this basis.

C.  **ALJ's RFC Determination**

Plaintiff challenges the ALJ's RFC determination on the grounds that he failed to adequately consider all of plaintiff's impairments, including specifically the severity of her fatigue, hand tremors, and weakness, and to adequately explain the impairments he considered in determining her RFC.[2] Review of the ALJ's findings shows plaintiff's contention to be baseless.

It is clear, for example, that the ALJ considered plaintiff's allegations regarding her impairments in her hearing testimony and elsewhere in determining her RFC. He found:

> The claimant alleged that she could not work due to symptoms associated with multiple sclerosis. (Exhibit 2E p. 2). She reported to the State agency and testified at the hearing that she experienced tingling in her feet and hands, *shaking*

---

[2] Plaintiff attacks the ALJ's RFC determination on the additional ground that he did not have a vocational expert testify. The contention is factually erroneous because, as noted previously, a vocational expert did testify. *See* Tr. 11, 18, 36-39. The contention is also legally misplaced because a vocational expert is not used to determine a claimant's RFC, but rather at steps four and five to determine, given a claimant's RFC, whether the claimant can perform his past relevant work or, if not, whether other work is available to the claimant.

*of her hands* and nerve pain in her arms. The claimant explained that she had difficulty writing, completing manual tasks, and sitting and standing. She further stated that she experienced dizziness and hives. She reported that she had difficulty focusing due to headaches and dizziness. (Exhibits 6E p. 1; 2F p. 1; Hearing Testimony). *She also reported experiencing fatigue and malaise.* (Exhibit 2F p. 1).

Tr. 15-16 ¶ 5 (emphasis added). As indicated, the allegations the ALJ referenced included those relating to hand tremors and fatigue.

The ALJ also thoroughly discussed the medical evidence of record, which reflects further allegations by plaintiff. The ALJ found as follows:

> The medical evidence of record indicates that although the claimant was diagnosed with multiple sclerosis and chronic fatigue symptoms, physical examination and neurological testing results consistently failed to support the degree of limitation alleged. In July 2008, the claimant began experiencing intermittent numbness and tingling in her feet and right arm. An MRI from September 2008 showed that the claimant had spinal cord and brain lesions consistent with multiple sclerosis. (Exhibit 1F pp. 22-27). Treating neurologist Harris Hurwitz, M.D., prescribed Betaseron injections to take every other day. (Id. at p. 22).
>
> During the claimant's follow-up visits (December 15, 2008; May 12, 2009; November 10, 2009; May 20, 2010), Dr. Hurwitz found that the claimant had experienced no new multiple sclerosis attacks and was clinically stable. Detailed cranial nerve testing was normal. *The claimant had normal power*, tone, and coordination. Sensory testing was unremarkable. Additionally, her reflexes were brisk. Although the claimant reported experiencing hives associated with injections, Dr. Hurwitz characterized this symptom as mild and he continued to prescribe the medication. (Exhibit 1F pp. 6-20).
>
> In August 2010, the claimant initiated treatment with neurologist Kapil Rawal, M.D. *The claimant reported* left sided numbness, difficulty walking, *hand tremors*, and right arm numbness. *She further complained of fatigue and low energy*. Despite these reported symptoms, neurological examination results were overall normal. *The claimant exhibited full strength throughout* with normal and symmetrical muscle tone and normal muscle bulk. Her reflexes were bilaterally symmetrical. Sensory examination showed normal results to pinprick and vibratory sensation. Her cranial nerves were fully intact. (Exhibit 3F pp. 2-3).
>
> One month later, the claimant was consultatively examined by M.A. Samia, M.D. The claimant complained of burning, tingling, and pain in her hands and feet and achiness in her legs. However, she also stated that she was able to cook, do

laundry, clean the bathroom, mop, sweep, shop, drive, visit friends, watch television, sit, lie down, dress herself, walk without assistance, turn doorknobs, grasp objects, raise arms overhead, and write and read. Physical examination results were consistent with Dr. Rawal's findings, although *Dr. Samia noted that the claimant had a mild resting tremor of both her hands and her fingers and her grip strength was slightly reduced* (4-5/5). She was able to heel and toe stand as well as tandem walk. (Exhibits 4F).

During the claimant's follow-up visits (December 1, 2010; January 24, 2011 July 25, 2011; January 12, 2012), the claimant reported the same symptoms and stated that she had stopped working because her hands shook and she could not type. She further stated that she felt tired most of the time. The claimant's neurological examination remained normal. *Dr. Rawal noted that the claimant did not have tremors*. MRI results, when compared with her previous study from 2008, also remained unchanged. Nerve conduction studies and EMG results were normal. (Exhibit 5F pp. 3-9). Dr. Rawal continued to prescribe Betaseron injection as the same dose. The claimant did not report any side effects. Additionally, Dr. Rawal prescribed Gabapentin during her December 2010 visit for numbness and tingling. At her visit in July 2011, Dr. Rawal reduced the dose of Gabapentin in response to the claimant's reports that it caused her to feel dizzy. Subsequently, the claimant did not report any adverse reactions to the medication. (Exhibit 7F pp. 3-4). *Dr. Rawal further diagnosed the claimant with chronic fatigue syndrome*, but did not detail the tests performed or clinical findings, which led to the diagnosis. Additionally, he did not recommend treatment. (Exhibits 5F pp. 2-3; 7F pp. 1-4).

Tr. 16-17 ¶ 5 (emphasis added).

As this discussion by the ALJ indicates, he addressed plaintiff's impairments comprehensively and made clear the impairments he considered in determining her RFC, including specifically plaintiff's fatigue, hand tremors, and weakness. Substantial evidence supports the ALJ's assessment, among it the evidence he cites.

The ALJ, of course, had previously found plaintiff's chronic fatigue syndrome to be a severe impairment at step two, signifying that it has more than a minimal effect on her ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). That determination, unchallenged, of course, by plaintiff, is also supported by substantial evidence.

In support of her challenge to the RFC determination, plaintiff relies heavily on her own testimony. (*See* Pl.'s Mem. 9-10). As discussed below, though, the ALJ properly found plaintiff's testimony to be less than fully credible.

The court concludes that the ALJ's RFC determination is supported by substantial evidence and based on the proper legal standards. Plaintiff's challenge to the RFC determination should accordingly be rejected.

### D. ALJ's Assessment of Plaintiff's Credibility

The ALJ found plaintiff's allegations of her limitations to be less than fully credible. The court finds no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996); *accord Craig v. Chafer*, 76 F.3d 585, 589 (4th Cir. 1996). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.*; *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *accord Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, in assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms." Tr. 16 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 16 ¶ 5. He stated that "the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 16 ¶ 5.

The ALJ provided specific reasons for his credibility determination. Tr. 15 ¶ 5. He stated:

> The above-summarized medical evidence indicates that although the claimant has some functional limitations related to her physical impairments, her limitations do not prevent her from performing a full range of light work. The clinical findings contained in the medical evidence of record were consistently normal. Nevertheless, the undersigned has given the claimant the full benefit of the doubt regarding her reported symptoms of numbness, tingling and pain related to her hands, legs, feet, and arms as well as her reported level of fatigue. The claimant reported to the medical consultative examiner that she was able to perform most household chores and was moderately active during the day. At the hearing she testified, that she was unable to help her husband around the house. However, the medical record does not show evidence of deterioration of the claimant's physical condition to support these limitations.

Tr. 17 ¶ 5. These findings by the ALJ are supported by substantial evidence of record, including the medical evidence previously discussed.

The court concludes that the ALJ's determination of plaintiff's credibility was based on supported by substantial evidence and proper legal standards. This challenge to the ALJ's decision should accordingly be rejected.

### E. ALJ's Assessment of Dr. Rawal's Opinions

Neurologist Dr. Rawal treated plaintiff from 26 August 2010 until 12 January 2012. On 25 July 2011, he completed a medical source statement (Tr. 242-45). The ALJ gave Dr. Rawal's opinions only "partial weight." Tr. 17 ¶ 5. Plaintiff argues that the ALJ erred in not giving Dr.

Rawal's opinions controlling weight and, apparently, in not adequately explaining the weight he did give them.[3] The court disagrees.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D. W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(c)(2)-(6).

---

[3] Plaintiff expresses what the court understands to be this latter contention as the ALJ's "failing to state what weight was given to the various evidence." (Pl.'s Mem. 12). Plaintiff does not clearly identify the evidence to which she refers.

15

Case 5:13-cv-00650-D   Document 27   Filed 07/30/14   Page 15 of 19

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion."). Where there are multiple opinions from a single source, an ALJ does not necessarily have to discuss each opinion separately to make clear the weight given it and the underlying reasons. *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2.

Here, the ALJ accurately described Dr. Rawal's opinions in the medical source statement as follows:

> He stated that the claimant could lift and/or carry 10 pounds occasionally and frequently. He further stated that the claimant could stand and/or walk for less than two hours in an eight-hour workday. Dr. Rawal noted that the claimant's ability to sit was not affected by her impairments. Lastly, he concluded that the claimant could only occasionally perform postural and manipulative functions due to tremors in her hands, weakness in her arms, and fatigue. (Exhibit 6F).

Tr. 17 ¶ 5. Dr. Rawal also found plaintiff subject to several environmental limitations. Tr. 245.

Although plaintiff asserts that this assessment by Dr. Rawal restricts her to less than sedentary work and thereby signifies that she was disabled, it actually indicates that plaintiff was capable of a limited range of sedentary work. The Regulations define "sedentary work" as

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see also* DOT app. C § IV, def. of "S-Sedentary Work."[4] Therefore, even if Dr. Rawal's opinions were given controlling weight, they would not necessarily establish that plaintiff was disabled, although admittedly the various limitations would erode the sedentary occupational base[5] and might preclude her past relevant work even though it was at the sedentary level (*see* Tr. 18 ¶ 6).

In any event, contrary to plaintiff's contention, the ALJ did state and explain the weight he gave Dr. Rawal's opinions, which he addressed collectively:

> Dr. Rawal's opinion is given partial weight because it is not entirely consistent with his clinical findings, which repeatedly showed that the claimant had normal neurological examination results.

Tr. 17 ¶ 5.

The ALJ's analysis is supported by substantial evidence. Dr. Rawal's records document that plaintiff had full motor strength with normal and symmetrical muscle tone and muscle bulk (Tr. 220, 248-49, 213) and lack of hand tremors (Tr. 221, 249, 213) on 24 January 2011, 25 July 2011, and 26 August 2011, respectively. The records also reflect that plaintiff had normal results on neurological examinations (Tr. 212-13, 220-21, 225, 248-49) throughout the same time period. At a visit on 12 January 2012, the same month as the hearing before the ALJ, Dr. Rawal found that plaintiff was in "no acute distress," had normal neurological findings, did not exhibit tremors, and was "clinically stable." Tr. 246-47. This evidence, together with the ALJ's stated explanation, belies plaintiff's contention that the ALJ did not fully credit Dr. Rawal's opinions

---

[4] Plaintiff asserts erroneously that Dr. Rawal's assessment limited plaintiff to less than the sedentary level. (Pl.'s Mem. 13).

[5] While any significant manipulative limitations results in significant erosion of the unskilled sedentary occupational base (*see* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *8 (2 July 1996)), plaintiff's past relevant work was at the semi-skilled level (*see* Tr. 18 ¶ 6).

17
Case 5:13-cv-00650-D   Document 27   Filed 07/30/14   Page 17 of 19

simply "because [he] believed [Dr. Rawal's] opinion[s] [were] based largely on plaintiff's subjective complaints." (Pl.'s Mem. 13).

Plaintiff argues that rather than giving the opinions of Dr. Rawal appropriate weight, he gave "considerable" weight to the opinions of the two state agency nonexamining consulting physicians, Stephen Levin, M.D., dated 14 September 2010 (Tr. 42-48), and Robert Gardner, M.D., dated 12 January 2011 (Tr. 50-57). (Pl.'s Mem. 13). Plaintiff's contention is plainly incorrect. These physicians found plaintiff capable of a full range of medium work (Tr. 46-47, 55)—that is, work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ expressly rejected these opinions in part, finding plaintiff capable of light work. Tr. 17 ¶ 5. The ALJ explained: "The State agency medical consultants' physical assessments are given *partial weight* because evidence received at the hearing level, including Dr. Rawal's updated treatment records, indicate that the claimant could perform light exertional work." Tr. 17 ¶ 5 (emphasis added). The court finds this determination supported by substantial evidence.[6]

The court concludes that the ALJ's assessment of Dr. Rawal's opinions, including his explanation of the weight he accorded them, is supported by substantial evidence and based on the proper legal standards. The same is true of the ALJ's assessment of the state agency consulting physicians' opinions. Plaintiff's challenges to this aspect of the ALJ's decision should accordingly be rejected.

## III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper

---

[6] In the section of her brief addressing this issue, plaintiff misidentifies Dr. Rawal as plaintiff's psychiatrist (Pl.'s Mem. 13) and the ALJ as ALJ King (rather than ALJ Seery) (Pl.'s Mem. 13); and refers to opinions of a state agency psychologist, although there is no such psychologist of record in this case (Pl.'s Mem. 14).

legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 22) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 19) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 13 August 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 30th day of July 2014.

James E. Gates
United States Magistrate Judge